## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JAMES BOURGEOIS CONTRACTOR, INC.

CIVIL ACTION

VERSUS

JOSEPH ANDERSON, ET AL.

NO. 25-00472-BAJ-SDJ

### RULING AND ORDER

Before the Court is Plaintiff's **Motion For Temporary Restraining Order And/Or Preliminary Injunction (Doc. 3, the "Motion)**. Defendants oppose the Motion. (Doc. 12). Plaintiff filed a Reply. (Doc. 23).

The Court held a Status Conference with the Parties regarding Plaintiff's request for a temporary restraining order ("TRO"), during which Defendant agreed to reschedule an Administrative Hearing while the Court considers Plaintiff's request for a preliminary injunction. (Doc 11). The Court denied without prejudice Plaintiff's TRO request and set a briefing schedule regarding Plaintiff's request for a preliminary injunction. (Doc. 10).

Plaintiff's remaining request for injunctive relief asks the Court to enjoin Defendants from moving forward with an Administrative Hearing concerning the status of Plaintiff's contractor licenses. (*See* Doc. 3-1 at 12–13). In its Order following the Status Conference, the Court specified that it would only consider injunctive relief regarding the upcoming Administrative Hearing and will not consider on an

1

expedited basis any reinstatement of Plaintiff's licenses or the constitutionality of the statutes in question. (*Id.*). Oral argument is not necessary.

For the reasons that follow, Plaintiff's Motion will be **DENIED**.

## I.    BACKGROUND

This case arises out of an investigation into Plaintiff's contract work by Defendant Louisiana State Licensing Board for Contractors ("Defendant LSLBC"). (Doc. 1 at ¶¶ 5–12). Though there are some minor fact discrepancies between Plaintiff and Defendants' versions of the facts, the Court accepts the following facts, largely supplied by Plaintiff, as true for purposes of resolving Plaintiff's Motion:

On September 27, 2024, Defendant Laurie LaRose ("Defendant LaRose"), an investigator for Defendant LSLBC, emailed Plaintiff requesting documentation and other information regarding the status of work to construct a camp in Golden Meadow, Louisiana. (*Id.* at ¶¶ 5, 7). Plaintiff allegedly never received this email message. (*Id.* at ¶ 7). On October 4, 2024, Defendant LaRose sent Plaintiff a letter via certified mail to Plaintiff with the same request, but Plaintiff allegedly did not receive the letter in part because Plaintiff was away attending to a relative who suffered from a serious illness. (*Id.*). The letter was returned to Defendant LSLBC on November 15, 2024. (*Id.*).

On October 24, 2024, Defendant LaRose successfully served a subpoena on Plaintiff demanding the documentation and information about the Golden Meadow camp construction project within 72 hours. (*Id.* at ¶ 8; Doc. 12 at 4). On Octboer 26, 2024, within 48 hours of receiving the Notice, Plaintiff hand delivered

documents to Defendant LSLBC. (Doc. 1 at ¶ 8). Plaintiff asserts that an internal email by Defendant LSLBC confirms Defendant LSLBC's receipt of these documents, though Plaintiff has not yet produced this alleged email message. (*See id.*).

The Parties agree that one of the Defendants notified Plaintiff that Plaintiff did not sufficiently respond to the Notice, but they disagree on who said this and when: Plaintiff asserts that Defendant Joseph Anderson ("Defendant Anderson"), another investigator for Defendant LSLBC, notified Plaintiff on or about December 10, 2024, that additional documents received on that date were "[s]till not enough." Defendants, however, contend that on the same day in October that Plaintiff provided documents to Defendant LSLBC, Defendant LaRose informed Defendant that Plaintiff had not provided all requested information. (*See id.*; Doc. 12 at 4–5).

On March 25, 2025, Defendant LaRose successfully served upon Plaintiff a "Notice of Violation and Hearing," (the "Notice") which notified Plaintiff that Defendant LSLBC "has reasonable grounds to believe that [Plaintiff] has violated … Section 129(A) of the Rule and Regulations: Contractors must maintain adequate records and provide such to the Board within 72 hours upon request." (Doc. 1 at ¶ 8). The Notice did not provide factual assertions to support Defendant LSLBC's allegations against Plaintiff. (*Id.*). The Notice included a Summary Suspension Order, which suspended Plaintiff's contractor licenses pending an Administrative Hearing set for April 17, 2025. (*Id.* at ¶ 10; Doc. 12 at 6).

On April 9, 2025, at Plaintiff's request, Defendant LSLBC rescheduled the Administrative Hearing to June 19, 2025. (Doc. 12 at 6). On May 12, 2025, Defendant

3

LSLBC provided over 200 pages of documents to Plaintiff, which Defendant LSLBC contends constitutes all materials Defendant LSLBC will use against Plaintiff at the Administrative Hearing. (*Id.*; Doc. 1 at ¶ 15). Plaintiff submitted interrogatories and a set of 13 requests for document production to Defendant LSLBC, which as of June 2, 2025, the date that Plaintiff filed the Complaint in this case, had gone unanswered. (Doc. 1 at ¶ 15). However, on July 1, 2025, Defendant LSLBC issued responses to Plaintiff's interrogatories and requests for production which Defendant LSLBC claims further articulate the nature of Plaintiff's alleged violations. (Doc. 37-1 at 6–7).

Plaintiff's Complaint listed the aforementioned Defendants, each in their respective official capacity, as well as Shannon Sagona ("Defendant Sagona"), who is Defendant LSLBC's Enforcement Coordinator, Governor Jeff Landry ("Defendant Landry"), Brad Hassert ("Defendant Hassert"), who is Defendant LSLBC's Executive Director, Lee Mallett ("Defendant Mallett"), who is Defendant LSLBC's Commercial Board Chairman, and Elliot J. Temple ("Defendant Temple"), who is Defendant LSLBC's Residential Board Chairman. (*Id.* at ¶ 2). Plaintiff broadly alleges that "Defendants are seeking to conduct a trial by ambush in violation of Plaintiff's constitutional and civil rights." (*Id.* at ¶ 15).

Plaintiff alleges that (1) Defendants have provided constitutionally insufficient notice in violation of Due Process rights under the Constitution of the United States and the Constitution of Louisiana, (2) the denial of a hearing before suspending Plaintiff's contractor licenses violates federal and state constitutional Due Process

rights, as well Louisiana state law, (3) Defendant LSLBC's consolidated roles of investigation, prosecution, and adjudication of Plaintiff violate principles of Due Process, (4) the Louisiana state statutes which Plaintiff has allegedly violated are unconstitutionally void for vagueness, and (5) Defendants' prosecution of Plaintiff constitutes a fundamentally unfair process in violation of Plaintiff's Due Process rights under the color of state law. (*Id.* at ¶¶ 13–33).

Plaintiff seeks a preliminary injunction "enjoining any hearings or prosecution of the accusations of violations by the Defendants-Respondents pending cure of the deficiencies in the Notices, vacating the Summary Suspension of Plaintiff's licenses and reinstating those licenses until there is a lawful notice and pre-suspension hearing, and delaying any further proceedings pending a judgment by the Court on Plaintiff's request for a declaratory judgment determining the constitutionality of Rule 129(A) and La. R.S. 37:2158(A)(11)." (Doc. 3-1 at 13). Plaintiff also requests declaratory judgments with respect to each of its claims, as well as "compensatory and punitive damages in the amount of twenty million dollars, attorneys' fees, [and] all costs." (Doc. 1 at ¶¶ 40–42).

On August 12, 2025, the Court granted Louisiana Attorney General Liz Murrill's ("Intervenor Murrill") Unopposed Motion to Intervene for the Limited Purpose of Defending Petitioner's Constitutional Challenge to a Louisiana Statute. (Doc. 38). Intervenor Murrill submitted a Motion to Dismiss (Doc. 36), and all Defendants filed a separate Motion to Dismiss (Doc. 37), which are not yet fully briefed by the Parties.

A Joint Status Report from the Parties indicates that the Administrative Hearing has been rescheduled to August 20, 2025, yet it also specifies that it will take place on August 21, 2025. (Doc. 33 at 4–5).

As noted, the Court narrowed its consideration of Plaintiff's preliminary injunction request to the question of whether to allow the Administrative Hearing to take place before the Courts resolves Plaintiff's claims.[1] (Doc. 10).

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal citations and quotations omitted); *see also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors."); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a preliminary injunction is to be treated as the exception rather than the rule."). The decision to grant or deny a request for a preliminary injunction is within the sound discretion of the Court. *See Allied Mktg.*, 878 F.2d at 809.

At all times, the burden of persuasion rests with the plaintiff to establish each

---

[1] The Court acknowledges that the Parties, in their briefing regarding Plaintiff's request for a preliminary injunction, briefed the issue of whether Defendant LSLBC's summary suspension of Plaintiff's licenses violates Plaintiff's Due Process rights. However, as noted in its prior Order, (Doc. 10), because the Court is only addressing the legality of the Administrative Hearing itself, the Court declines to review this question on an expedited basis.

of the four elements required for issuance of a preliminary injunction:
(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of
irreparable injury if the injunction is not granted; (3) the threatened injury outweighs
any harm that will result to the non-movant if the injunction is granted; and
(4) the injunction will "not disserve the public interest." *See Barton v. Huerta*,
613 F. App'x 426, 427 (5th Cir. 2015) (citation omitted). If a plaintiff fails to meet its
burden regarding any of the necessary elements, the Court need not address the other
elements necessary for granting a preliminary injunction. *See Roho, Inc. v. Marquis*,
902 F.2d 356, 361 (5th Cir. 1990) (declining to address the remaining elements
necessary to obtain a preliminary injunction after finding that the plaintiff failed to
show a substantial likelihood of success on the merits); *see also Garden Dist. Book
Shop, Inc. v. Stewart*, 184 F. Supp. 3d 331, 335 (M.D. La. 2016). A preliminary
injunction is an "extraordinary remedy" that should not be granted unless a party
demonstrates the above four factors by a "clear showing." *Valley v. Rapides Par. Sch.
Bd.*, 118 F.3d 1047, 1051 (5th Cir.1997).

## III. DISCUSSION

To succeed on a preliminary injunction, Plaintiff must establish a substantial
likelihood of prevailing on the merits. *See Barton*, 613 F. App'x at 427. Accordingly,
the Court begins its inquiry here. The Court will also address whether there is a
substantial likelihood that Plaintiff will suffer an irreparable injury if the Court does
not grant its preliminary injunction request. For the reasons stated below, the Court
finds that Plaintiff cannot bear its burden at this stage of the litigation.

### A. Likelihood of Success on the Merits

With respect to the legality of the upcoming Administrative Hearing, Plaintiff asserts that Defendants' Notice does not comply with Due Process requirements and that Defendant LSLBC's consolidated roles of investigation, prosecution, and adjudication of Plaintiff violate principles of Due Process. (Doc. 1 at ¶¶ 36–37). Defendants counter that Plaintiff is not likely to succeed on the merits because the Court lacks subject matter jurisdiction over the injunctive relief claims against certain Defendants. (Doc. 12 at 9–12). The Court will address each issue in turn.

### 1. Subject Matter Jurisdiction

Defendants assert that Eleventh Amendment sovereign immunity applies to Plaintiff's injunctive claims against Defendants Anderson, Sagona, Landry, and Hassett, and that the Court therefore lacks subject matter jurisdiction to decide those claims. (Doc. 12 at 9).

Eleventh Amendment sovereign immunity generally bars private suits against nonconsenting states in federal court. *City of Aus. v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Sovereign immunity also prohibits suits against state officials or agencies that are effectively suits against a state. *Id.* However, an exception to sovereign immunity exists pursuant to the Supreme Court of the United States' decision in *Ex parte Young*, 209 U.S. 123 (1908), which allows plaintiffs to pursue injunctive or declaratory relief against individual state officials in their official capacities acting in violation of federal law. *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). The *Ex parte Young* exception requires a defendant to have "some

connection" to the state law's enforcement and to threaten to exercise that authority. *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017).

Although Defendants argue that the aforementioned Defendants do not fall within the *Ex parte Young* exception, Defendants acknowledge that Defendants Mallett and Temple may fall within the exception since they will serve as adjudicators at the Administrative Hearing. (Doc. 12 at 11). The Court agrees that at least some Defendants have "some connection" to the state's law enforcement efforts here and the threatened use of that enforcement via the upcoming Administrative Hearing. Because dismissing claims for injunctive relief against the aforementioned Defendants would not prevent the Administrative Hearing from taking place, the Court defers for further consideration Defendants' request to dismiss those claims. Further, because there are Defendants against whom a preliminary injunction could be imposed, the Court will not deny Plaintiff's request for a preliminary injunction on the basis of Eleventh Amendment sovereign immunity.

Defendants also assert that the Court should exercise its discretion to abstain from hearing this case under the *Burford* abstention doctrine, as articulated by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Burford* abstention "allows federal courts to avoid entanglement with state efforts to implement important policy programs." *Elec. Reliability Council of Tex., Inc. v. Just Energy Tex., L.P.*, 57 F.4th 241, 249 (5th Cir. 2023) (quoting *Grace Ranch, L.L.C. v. BP Am. Prod.*

9

*Co.*, 989 F.3d 301, 313 (5th Cir. 2021)).

> Where timely and adequate state-court review is available, a federal
> court sitting in equity must decline to interfere with the proceedings or
> orders of state administrative agencies: (1) when there are "difficult
> questions of state law bearing on policy problems of substantial public
> import whose importance transcends the result in the case then at
> bar;"or (2) where the "exercise of federal review of the question in a case
> and in similar cases would be disruptive of state efforts to establish a
> coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)
(quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814
(1976)).

In deciding whether to abstain under *Burford*, courts consider: (1) whether the
plaintiff raises state or federal claims, (2) whether the case involves unsettled state
law or detailed local facts, (3) the importance of the state's interest in the litigation,
(4) the state's need for a coherent policy in the area, and (5) whether there is a special
state forum for judicial review. *Elec. Reliability*, 57 F.4th at 249. "The power to
abstain under *Burford* charges courts with a careful balancing of state and federal
interest, but one that 'only rarely favors abstention.'" *Grace Ranch*, 989 F.3d at 313
(quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)).

Here, the balance of state and federal interests do not favor abstention. First,
though Plaintiff's claims involve state laws, Plaintiff also asserts all of his claims
under the United States Constitution. Second, while the facts of the case revolve
around a state investigation, the thrust of Plaintiff's claims are that Defendants did
not comply with federal Due Process standards. Third, although the state has a
strong interest in the regulation of licensed contractors within its borders, this
interest does not outweigh Plaintiff's federal right to Due Process. Fourth, the Court

acknowledges the state's need for a coherent policy with respect to license regulation. However, Plaintiff's Complaint only requests that state law comply with Constitutional mandates. The fifth and final *Burton* factor weighs in Defendants' favor because state law allows for a petition for review of an agency decision to be brought in the state district court of the parish in which the agency is located. *See* La. Stat. Ann § 49:978.1 (2025). Nonetheless, because four of the five *Burton* factors weigh in Plaintiff's favor, the Court will not deny the preliminary injunction on this basis.

### 2.  Notice of the Administrative Hearing

Plaintiff argues that "[i]t is self-evident from an examination of the Notices ... that they provide absolutely no substantive information or notice of the facts or accusations. They merely make reference to the Rules and Statutes allegedly violated." (Doc. 3-1 at 6). Plaintiff also argues that Defendant LSLBC never responded to Plaintiff's interrogatories, "and provided only some documents which it claims are its exhibits and its investigative file. This single discovery response provides absolutely no information." (*Id.* at 3).

Defendants contend that because the Notice identifies the project, the statutes and rules Plaintiff is accused of violating, and the date, time, and location of the Administrative Hearing, its contents along with "the totality of the circumstances related to the investigation" provide Plaintiff with sufficient notice to prepare for the Administrative Hearing. (Doc. 12 at 14–15). The Court additionally notes that after the Parties briefed the Court on the sufficiency of Defendants' notice,

Defendant LSLBC issued responses to Plaintiff's interrogatories and requests for production. (Doc. 37-1 at 6–7).

A procedural due process violation requires a finding that the defendant deprived plaintiff of a property interest without notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976). The extent of the required notice and hearing requirement is context dependent. *Lion Elastomers, L.L.C. v. Nat'l Lab. Rels. Bd.*, 108 F.4th 252, 260 (5th Cir. 2024). Courts determine the extent of the proper procedural protections that a particular situation demands by evaluating (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and [the] probative value, if any, of additional procedural safeguards," and (3) "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Jabary v. City of Allen*, 547 F. App'x 600, 606–07 (5th Cir. 2013) (quoting *Mathews*, 424 U.S. at 321).

"[P]rocedural due process in the administrative setting does not always require application of the judicial model." *Dixon v. Love*, 431 U.S. 105, 115 (1977). "The right to a fair hearing in an administrative proceeding embraces 'a reasonable opportunity to know the claims of the opposing party and to meet them.'" *Intercontinental Indus., Inc. v. Am. Stock Exch.*, 452 F.2d 935 (5th Cir. 1971) (quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938)).

Here, in evaluating Plaintiff's inadequate notice claim, the Court considers the

Notice in combination with Defendants' responses to Plaintiff's interrogatories and the trial exhibits Defendants have provided to Plaintiff. Plaintiff's private interest is significant, as it affects its ability to operate as a business. Correspondingly, Defendants' interest in protecting the public from contractors who do not follow legal requirements also serves a critical function.

The crux of Plaintiff's argument is that although the charges against Plaintiff and the date, time, and location of the Administrative Hearing are clear, Notices that explicitly describe the factual allegations underlying the charged conduct are necessary to protect against the risk of an erroneous deprivation of Plaintiff's contractor licenses. The Court agrees that providing this information would be helpful in allowing Plaintiff to mount a robust defense to Defendants' allegations.

However, given Defendants' subsequent evidentiary disclosures to Plaintiff, including responses to Plaintiff's interrogatories, the investigative file that led to Defendants' enforcement action against Plaintiff, and the exhibits that will be used against Plaintiff at the Evidentiary Hearing, the Court cannot conclude that the extraordinary and drastic remedy of issuing a preliminary injunction to prevent the Evidentiary Hearing from taking place is appropriate here. Having had responses to its interrogatories and the evidence that Defendants will use against Plaintiff at the Administrative Hearing for over a month, (Doc. 37-1 at 6–7), the information Plaintiff has received since requesting the preliminary injunction likely exceeds the relief Plaintiff seeks in the first place.

The Court therefore finds that Plaintiff is not substantially likely to succeed in

prevailing in its claim that it did not receive proper notice of the Administrative Hearing. The Court accordingly denies issuing a preliminary injunction on this basis.

### 3. Consolidated Roles of Investigation, Prosecution, and Adjudication

Plaintiff argues that Defendant LSLBC is unable to act as a fair and impartial tribunal because, having already decided to summarily suspend Plaintiff's license ahead of the Administrative Hearing, Defendant LSLBC has already "pre-judged" Plaintiff's guilt. (Doc. 23 at 9). Plaintiff contends that Defendant LSLBC now has "an undeniable direct interest in the outcome of the Administrative Hearing" and cites La. Code Crim. Proc. Ann. art. 671(A)(5), which in *criminal* cases, requires the recusal of a judge who has performed a judicial act in the same case in another forum. (*Id.* at 9). Plaintiff also cites La. Civ. Code Ann. art. 151, which forbids civil judges from overseeing cases in which the judge is "biased, prejudiced, or interested in the cause or its outcome." (*Id.*)

Defendant argues that Plaintiff has not presented any evidence of personal bias, pecuniary interest, or other special circumstances indicating an intolerably high risk of unfairness. (Doc. 12 at 19).

"A fair trial in a fair tribunal is a basic requirement of due process." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (internal citation omitted). The right to a fair tribunal applies to both courts and administrative agencies which take on adjudicative functions. *Id.* (citing *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973)). A plaintiff's contention that the combination of investigative and adjudicative functions

necessarily creates an unconstitutional risk of bias "must overcome a presumption of honesty and integrity in those serving as adjudicators." *Id.* at 47. This is a "difficult burden" to overcome, and the plaintiff must show "such a risk of actual bias or prejudgment that the practice must be forbidden." *Id.*

A plaintiff may rebut the presumption of honesty and integrity on the part of adjudicators by presenting "special circumstances" which demonstrate that "the risk of unfairness is intolerably high." *Id.* at 58. The Supreme Court has found cases in which "the adjudicator has a pecuniary interest in the outcome" and where the adjudicator "has been the target of personal abuse or criticism from the party before him" to be instances where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* at 47.

Here, Plaintiff demonstrates no pecuniary interest on the part of Defendant LSLBC, and Defendant LSLBC has not been the subject of abuse from Plaintiff. Nor does Plaintiff present any "special circumstances" at all that would demonstrate an intolerably high risk of unfairness to overcome the presumption of honesty and integrity that the law requires the Court apply to Defendant LSLBC. Instead, Plaintiff merely references an earlier decision in the case—the summary suspension of Plaintiff's licenses—to support its claim of bias.

Plaintiff's broad references to standards imposed on criminal and civil judges do not appear to apply to the administrative adjudicators here; however, even if they did apply, the Court cannot conclude that the administrative adjudicators here have contravened those standards.

The Court therefore finds that Plaintiff is not substantially likely to succeed in prevailing in its claim that the Administrative Hearing is a fundamentally unfair tribunal. The Court accordingly denies issuing a preliminary injunction on this basis.

### B. Irreparable Injury

The Court also finds that, for several reasons, Plaintiff has not shown a substantial threat of irreparable injury if the preliminary injunction is not granted.

Plaintiff argues that it will suffer irreparable harm if the Administrative Hearing goes forward because allegations of constitutional violations permit a *per se* finding of irreparable harm. (Doc. 3-1 at 9–10 (citing *Jolly v. Coughlin*, 76 F.3d 468, 482 (2nd Cir. 1996))).[2]

However, injunctive relief is generally an "extraordinary remedy which requires the movant to unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Grp., Inc. v. C.D.L. Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989)). As in *Ryon v. Burkhalter*, Plaintiff has not shown that it "will not receive a favorable outcome in the administrative hearing which [it] seek[s] to enjoin," and thus is not entitled to injunctive relief on this basis. *See Ryon v. Burkhalter*, No. CIV. A. 08 - 333- C, 2008 WL 2704833, at *1 (M.D. La. July 7, 2008).

Further, as previously noted, Plaintiff may petition a state court to review the result of the Administrative Hearing. *See* La. Stat. Ann § 49:978.1 (2025). Though Plaintiff cites statistics that it believes show that its chances of success are low,

---

[2] The Court emphasizes that the case cited by Plaintiff for the proposition that it will suffer irreparable harm is merely persuasive but not binding precedent.

(Doc. 23 at 6), the fact that an Administrative Hearing will take place does not mean that Plaintiff will not prevail at that Hearing, that such Hearing will be conducted in a fundamentally unfair or biased manner, or that said hearing is the final chance for Plaintiff to argue its case.

Additionally, a preliminary injunction is generally an inappropriate remedy where harm may be relieved by damages. *See Endurance Assurance Corp. v. Axon Power & Gas LLC*, No. 3:20-CV-00285-X, 2020 WL 3792259, at *1 (N.D. Tex. July 6, 2020) (finding that harm that is "strictly financial" without allegations of economic loss that would threaten the existence of plaintiff's business does not constitute irreparable harm). Here, though Plaintiff alleges that it has "suffered the improper termination of his business," Plaintiff "seeks compensatory and punitive damages in the amount of twenty million dollars." (Doc. 1 at ¶¶ 32–33). *See Sampson v. Murray*, 415 U.S. 61, 90 (1074) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Accordingly, Plaintiff's potential suspension or revocation of its contractor licenses following the Administrative Hearing fails to amount to the "immediate and irreparable harm necessary to justify the issuance of a temporary restraining order." *Ryon*, No. CIV.A. 08-333-C, 2008 WL 2704833, at *1.

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion (Doc. 3)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this _____ of August, 2025

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**