**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**JAMES BOURGEOIS CONTRACTOR, INC.**

**CIVIL ACTION**

**VERSUS**

**JOSEPH ANDERSON, ET AL.**

**NO. 25-00472-BAJ-SDJ**

## RULING AND ORDER

Before the Court is **Defendants' Motion to Dismiss (Doc. 55)**. Plaintiff opposes the Motion. (Doc. 58). Defendants filed a Reply. (Doc. 59).

For the reasons that follow, **Defendants' Motion to Dismiss (Doc. 55)** will be **GRANTED.**

## I. BACKGROUND

This case arises from an investigation into Plaintiff James Bourgeois Contractor, Inc., for allegedly failing to provide contract-related records within 72 hours of a demand by the Louisiana State Licensing Board for Contractors ("LSLBC"), in violation of LSLBC's administrative code. Although the factual allegations of this case derived from Plaintiff's Amended Complaint have already been recounted in detail in a previous Order and Ruling, (Doc. 66), the Court will repeat them here for ease of reference.

In February 2024, unlicensed contractor Shane Guidry executed a contract to

construct a camp in Golden Meadow, Louisiana.[1] (Doc. 47 ¶ 5). Guidry applied for a permit using Plaintiff's residential construction license without Plaintiff's consent or authorization.[2] (*Id.*). Guidry then began construction of the camp. (*Id.*). The camp owners requested that Guidry engage Plaintiff as an independent contractor to manage the construction site. (*Id.* ¶ 6). Plaintiff withdrew from the project shortly after signing its contract due to a family emergency, and it was never paid by the camp owners or by Guidry. (*Id.*).

After the camp owners discovered issues with the construction work, LSLBC initiated an investigation into the site in September 2024. (*Id.* ¶¶ 5, 7). On September 27, 2024, Defendant Laurie LaRose, an investigator for LSLBC, emailed Plaintiff requesting documentation and other information about the status of work on the camp (presumably because the permit was in Plaintiff's name). (*Id.* ¶ 7). Plaintiff avers that it never received this email. (*Id.*). On October 4, 2024, LaRose sent Plaintiff a letter via certified mail with the same request for information and documentation. (*Id.*). Plaintiff avers that it did not receive the letter. (*Id.*). The letter was returned to LSLBC on November 15, 2024. (*Id.*).

On October 24, 2024, LaRose successfully served a subpoena on Plaintiff, demanding documentation and information about the camp within 72 hours,

[1] In Louisiana, a "camp" refers to a secondary house used for personal recreational activities such as hunting, fishing, and swimming. These structures are often referred to as "vacation houses" or "cabins" in other regions of the United States. This is confirmed by Defendants' pleading, which refers to the construction as a "residential home." (Doc. 55-1 at 3).

[2] It appears that Guidry and Plaintiff knew one another prior to the camp's construction, but the Amended Complaint does not state how.

pursuant to Section 129(A) of the LSLBC Administrative Code ("Rule 129(A)"). (*Id.* ¶ 8). On October 26, 2024, within 48 hours of receiving the Notice, Plaintiff hand-delivered documents to LSLBC. (*Id.*). On December 2, 2024, Defendant Joseph Anderson, another investigator for LSLBC, met with Plaintiff, who provided him additional documents. (*Id.*). It appears that Plaintiff provided Anderson more documents on or around December 10, 2024, but Anderson stated that these documents were "still not enough." (*Id.*).

On March 25, 2025, LaRose successfully served upon Plaintiff a "Notice of Violation and Hearing" (the "notice"), notifying Plaintiff that LSLBC "has reasonable grounds to believe that [Plaintiff] has violated . . . [Rule] 129(A) of [the LSLBC administrative code]: Contractors must maintain adequate records and provide such to the Board within 72 hours upon request." (*Id.* ¶ 9). The notice set an administrative hearing for April 17, 2025, informing Plaintiff that "The Board may issue any and all applicable penalties allowed by statute, which may include the revocation or suspension of a license/ registration, the assessment of fines and/or administrative costs, and orders to cease and desist from prohibited activities.[3] (Doc. 55-2 at 198). The notice was signed by Defendant Shannon Sagona. (*Id.*). The notice did not provide factual assertions to support LSLBC's contention that Plaintiff

[3] On Rule 12(b)(6) motions to dismiss, courts may look beyond the Complaint itself by considering "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The Court may consider the Notice of Violation and Hearing attached as an exhibit to Defendants' Motion to Dismiss because it is referenced in Plaintiff's Amended Complaint.

violated Rule 129(A). (Doc. 47 ¶ 9). In other words, the notice did not explain which required documents Plaintiff had failed to produce to LSLBC in October 2024.

On the same date, Anderson also issued a Summary Suspension Order (the "order") suspending Plaintiff's residential and commercial contractor's licenses pursuant to Louisiana Revised Statutes § 37:2158(6) for "[w]illful failure to comply with" Rule 129(A). (*Id.* ¶ 10). Like the notice, the order did not explain which documents Plaintiff had to provide LSLBC in October 2024 to comply with 129(A). (*Id.*). The order also suspended Plaintiff's licenses pursuant to Louisiana Revised Statutes § 49:977.3. (*Id.*). While Louisiana Revised Statutes § 49:977.3 typically requires the State to hold a hearing prior to suspending a license, subsection (C) allows the State to suspend prior to holding a hearing when "public health, safety, or welfare imperatively requires emergency action." La. Rev. Stat. § 49:977.3. A hearing was eventually set for Plaintiff to appear before Defendants, but it is unclear whether the hearing was ever held and what resulted from it.[4] (*Id.* ¶ 11).

In September 2025, Plaintiff filed its Amended Complaint against Defendants Anderson, LaRose, and Sagona, alongside three additional employees, officers, executives, and members of LSLBC, and the Governor of the State of Louisiana. Defendants have all been named in their individual capacities as employees, officers, executives, and members of the Louisiana State Licensing Board for Contractors

[4] Defendants' briefing states that Plaintiff requested to continue the April 17, 2025 hearing, which was continued to June, and then requested to continue the June 2025 hearing, which was continued to November 2025. (Doc. 55-1 at 17).

("LSLBC" or "Board") or as the Governor of the State of Louisiana.[5] Plaintiff contends that Defendants' actions violate its Due Process rights under the federal and Louisiana Constitutions.

Defendants filed the instant Rule 12(b)(6) Motion to Dismiss, arguing that Plaintiff has failed to satisfy the pleading standard and that Defendants are entitled to absolute and qualified immunity.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[5] Plaintiff's original Complaint sued the Defendants in their "official capacity." (Doc. 1 at 2–3). Plaintiff's operative Amended Complaint eliminated the "official capacity" language and instead sues the Defendants "individually, acting under color of state law." (Doc. 47 ¶ 2). Plaintiff did so to "mak[e] clear that Defendants are sued as 'persons' within the scope of 42 U.S.C[.] § 1983" and to "mak[e] clear that defendants are not entitled to Eleventh Amendment immunity or qualified immunity." (Doc. 41 ¶¶ 4–5). Plaintiff's Amended Complaint seeks $20 million in damages and a temporary restraining order and/or injunction "to preserve the status quo until such time as the issues herein can be properly litigated and adjudicated." (Doc. 47 ¶ 34–35). Plaintiff later filed a Motion For Temporary Restraining Order And/Or Preliminary Injunction (Doc. 3), which the Court denied. (Doc. 42). Plaintiff then filed a Motion To Withdraw Reconsideration Of TRO And/Or Preliminary Injunction (Doc. 53), stating that: "Plaintiff filed its First Supplemental and Amending Complaint. In reiterating all of the allegations of the original Complaint, it includes a prayer for a TRO and/or Preliminary Injunction. Whereas the Court has previously denied the similar prayer in the original Complaint, Plaintiff wishes to confirm with the Court that it has not renewed that prayer in the Supplemental Complaint, and withdraws any request for the Court to reconsider the TRO and/or Preliminary Injunction." (Doc. 53). Accordingly, the only relief Plaintiff's Amended Complaint seeks is damages against Defendants in their individual capacity for actions they undertook in their respective roles as government officials. Therefore, claims against Defendants are subject to the defense of qualified immunity.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## III. ANALYSIS

### A. Due Process.

#### i. Legal Standard.

"Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Parker v. La. Dep't of Pub. Safety and Corr.*, No. CV 18-1030-JWD-EWD, 2020 WL 4353564, at *8 (M.D. La. July 29, 2020) (citing 42 U.S.C. § 1983) (additional citations omitted).

To state a viable claim under Section 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't of Criminal Justice,* 512 F.3d 157, 165 (5th Cir. 2007) (internal quotation marks and citation omitted).

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV. Because the federal and Louisiana Constitutions contain virtually identical due process clauses, *Newell-Davis v. Phillips,* 55 F.4th 477, 485 (5th Cir. 2022) (citing *Progressive Sec. Ins. Co. v. Foster*, 711 So. 2d 675, 688 (La. 1998)), the Court will analyze both together.[6]

The United States Supreme Court has established "the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993). The extent of the required notice and hearing requirement is "context dependent." *Lion Elastomers, L.L.C. v. Nat'l Lab. Rels. Bd.*, 108 F.4th 252, 260 (5th Cir. 2024). "[P]rocedural due process in the administrative setting does not always require application of the judicial model."

---

[6] As noted, the Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV. The Louisiana Constitution similarly provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." La Const. art. 1, § 2. "[The] due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment." *Newell-Davis v. Phillips,* No. 22-30166, 2023 WL 1880000, at *6 (5th Cir. Feb. 10, 2023) (citing *Progressive Sec. Ins. Co. v. Foster,* 711 So.2d 675, 688 (La. 1998)).

*Dixon v. Love*, 431 U.S. 105, 115 (1977). "The right to a fair hearing in an administrative proceeding embraces a reasonable opportunity to know the claims of the opposing party and to meet them." *Intercontinental Indus., Inc. v. Am. Stock Exch.*, 452 F.2d 935 (5th Cir. 1971) (internal quotation marks omitted).

"The threshold requirement of any due process claim . . . is a showing that the government deprived the plaintiff of a liberty or property interest." *Book v. LaSalle Par. Sch. Bd.*, No. 1:20-CV-00297, 2021 WL 4513522, at *4 (W.D. La. Oct. 1, 2021) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 548 (5th Cir. 1989)). State law may determine what qualifies as a substantive property interest entitled to the protections of due process. *Stem v. Gomez*, 813 F.3d 205, 210–11 (5th Cir. 2016). Louisiana law affords Plaintiffs a property interest in their operating licenses. *Dandridge v. St. Germain*, No. CV 19-00529-BAJ-SDJ, 2020 WL 6092256, at *3 (M.D. La. Oct. 15, 2020) (citing *Acadian Ambulance Serv., Inc. v. Par. of E. Baton Rouge*, 97-2119 (La. App. 1 Cir. 11/6/98), 722 So. 2d 317, 324; *Wells Fargo Armored Serv. Corp. v. Georgia Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)). "Thus, some notice and opportunity to be heard is required before such [operating] licenses can be revoked." *Dandridge*, 2020 WL 6092256, at *3 (M.D. La. Oct. 15, 2020).

**ii. Plaintiff's Claims.**

Plaintiff alleges that Defendants suspended its contracting licenses in violation of the Due Process Clause by: (1) issuing a deficient notice; (2) suspending

Plaintiff's licenses prior to holding a hearing; and (3) jointly investigating, prosecuting, and adjudicating Plaintiff's alleged violations of Rule 129(A). Defendants seek to dismiss Plaintiff's due process claims.

**1. LSLBC Notices.**

As previously mentioned, on March 25, 2025, Plaintiff received a "Notice of Violation and Hearing" and "Summary Suspension Order," which (1) stated that LSLSBC believed Plaintiff violated Rule 129(A); (2) suspended Plaintiff's licenses; and (3) set an administrative hearing for April 17, 2025.

Plaintiff argues that the notice and order violate his Due Process rights. While the notice and order "provide dates for hearings and vaguely identify the Rule or statute allegedly violated, [they] are completely devoid of any facts or the 'short and plain statement of the matters asserted' as required by La. [Rev. Stat. §] 49:975(B)(1)(d)" and "fail to provide adequate 'notice' sufficient to even determine what accusations have been made[.]" (Doc. 47 ¶ 13). La. Rev. Stat. § 49:975, which governs state administrative procedures, provides that: "In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice . . . The notice shall include all of the following: (a) A statement of the time, place, and nature of the hearing[;] (b) A statement of the legal authority and jurisdiction under which the hearing is to be held[;] (c) A reference to the particular sections of the statutes and rules involved[;] [and] (d) A short and plain statement of the matters asserted. . . ." In short, Plaintiff complains that the notice and order violate La. Rev. Stat. § 49:975's requirement that a 'short and plain

statement of the matters asserted" be included in the notice because the notice and order do not enumerate which documents Plaintiff was required to provide LSLBC to comply with Rule 129(A).

**2. Suspension of Licenses.**

As previously mentioned, Plaintiff's license was suspended on March 25, 2025, with an administrative hearing date set for April 17, 2025. Plaintiff alleges that Defendants violated its constitutional Due Process rights by summarily suspending its licenses prior to holding a hearing about its alleged violation of Rule 129(A). Louisiana Revised Statutes 49:977.3(C) requires a state agency to notify a licensee of "conduct which warrant the intended action" (*i.e.,* conduct which warranted the license suspension) prior to an administrative hearing. However, the law has an exception which allows the State to suspend a license prior to a hearing when "public health, safety, or welfare imperatively requires emergency action." La. Rev. Stat. § 49:977.3. Plaintiff argues that the Summary Suspension Order "recites the standard required by the law, but contains not even a scintilla of facts or evidence supporting its conclusory 'finding' that an emergency exists." (Doc. 47 at 7). In short, Plaintiff contests that the Summary Suspension Order should have explained why its alleged failure to abide by Rule 129(A) constitutes an 'emergency' justifying a suspension prior to a hearing.

**3. Investigation, Accusation, and Adjudication Powers.**

Finally, Plaintiff alleges that LSLBC's "entire process of investigation, accusation/prosecution and adjudication by the same parties/persons constitutes a violation of plaintiff's rights to due process and a fair and impartial tribunal."

(Doc. 47 at 15).

Prior to resolving the Parties' arguments, the Court will turn to the immunity defenses asserted by Defendants.

**B. Absolute And Qualified Immunity.**

**i. Legal Standard.**

"The Supreme Court has recognized two kinds of immunity under a § 1983 claim: 'qualified immunity' and 'absolute immunity.' Under 'qualified immunity,' government officials are not subject to liability for the performance of their discretionary actions unless their conduct violates clearly established statutory or constitutional rights which a reasonable person would have known. 'Absolute immunity' denies a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct. As such the Supreme Court has been quite sparing in recognizing absolute immunity." *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997) (internal citations omitted).

"Although the Supreme Court has been rather conservative in its grants of absolute immunity, it has recognized that there are some officials whose duties require a full exemption from liability. Such officials include . . . certain 'quasi-judicial' agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court." *Id.* (internal citations omitted).

"Applying the Supreme Court's jurisprudence, [the United States Court of

Appeals for the Fifth Circuit] recently held that in order to determine whether a government official is absolutely immune from suit, the proper focus should not be the identity of the party claiming the immunity, but rather his 'role in the context of the case.' In other words, immunity attaches to particular official functions, not to particular offices. If the functions are of a judicial nature then [courts] must weigh the costs and benefits of denying or affording absolute immunity." *Id.* (internal citations omitted).

"The following factors are characteristic of the judicial process and are variables to be considered in determining absolute as contrasted with qualified immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal." *Id.* "No one factor is controlling and the list of considerations is not intended to be exclusive." *Id.*

The Fifth Circuit has held that absolute immunity extends to members of administrative boards serving in quasi-judicial roles, including when they revoke professional licenses. *See Di Ruzzo v. Tabaracci*, 480 F. App'x 796, 797 (5th Cir. 2012) (absolute immunity extended to counsel and members of Texas Medical Board performing quasi-judicial functions); *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 631 (5th Cir. 2000) (absolute immunity extended to Texas State Board

of Medical Examiners and its members when they revoked a dental license); *O'Neal*, 113 F.3d at 67 (absolute immunity extended to Mississippi Board of Nursing members when revoking nursing licenses following adjudicatory hearing). However, "[a] state agent performing investigative functions, as opposed to adjudicative or prosecutorial functions, is not entitled to absolute immunity." *Di Ruzzo*, 480 F. App'x at 797; *accord Beck*, 204 F.3d at 637 (absolute immunity did not extend to staff member of the Texas State Board of Medical Examiners Board for their investigative activities).

"Qualified immunity," in contrast, "provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "In determining whether an official enjoys immunity, [courts] ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"Although [the Supreme] Court's caselaw does not require a case directly on

point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (internal quotation marks and citations omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citations omitted). "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* at 105. "But . . . [a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* (internal quotation marks and citations omitted).

The 'clearly established right' must be defined "with specificity." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). The "[Supreme Court] has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela*, 584 U.S. at 104. Ultimately, "[t]he dispositive question is whether the violative nature of the *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original) (cleaned up). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (cleaned up).

The "'clearly established' standard does not mean that officials' conduct is protected by qualified immunity unless 'the very action in question has previously been held unlawful.' *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted). "[A]t the same time, an official does not lose qualified

immunity merely because a certain right is clearly established in the abstract. It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, for example, but those abstract rules give officials little practical guidance as to the legality of particular conduct. Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful." *Id.*

Further, the Supreme Court has held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). The Fifth Circuit has also held that "allegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right. This question must be answered solely by an inquiry into whether the constitutional right at issue was clearly established at the time of the events in question." *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986).

As to the second prong of the analysis, reasonableness, "'[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 104 (internal quotation marks and citations omitted). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* (internal quotation marks and citations omitted).

"It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate at the motion to dismiss stage." *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (internal citations and quotation marks omitted). However, "an assertion of qualified immunity . . . does not subject the complaint to a heightened pleading standard." *Id.* (internal citations and quotation marks omitted). "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead facts which, if proved, would defeat [the] claim of immunity." *Id.* (internal citations and quotation marks omitted). "The Supreme Court has expressly rejected the idea that it is the plaintiff's burden to 'identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established.'" *Id.* (citing *Elder v. Holloway*, 510 U.S. 510, 514 (1994)). "At the Rule 12(b)(6) stage, the district court [is] only to assess whether [a plaintiff's] complaint alleged sufficient facts to defeat qualified immunity." *Id.*

**ii. Analysis.**

Defendants aver that certain Defendants are entitled to absolute immunity and all Defendants are entitled to qualified immunity. Although it appears likely that certain Defendants are entitled to absolute immunity, that question need not be decided because all Defendants are immune under the defense of qualified immunity. Because Defendants have raised the qualified immunity defense, the burden is on Plaintiff's Amended Complaint to allege facts that, if proven true, are sufficient to defeat qualified immunity.

To do so, Plaintiff's Amended Complaint must allege that Defendants violated clearly established statutory or constitutional rights of which a reasonable person would have known. Because the clearly established right must be defined "with specificity[,]" *City of Escondido*, 586 U.S. at 42, rather than "at a high level of generality," *Kisela*, 584 U.S. at 104, "[t]he dispositive question is whether the violative nature of the particular conduct is clearly established." *Mullenix*, 577 U.S. at 12.

In this instance, Plaintiff alleges that Defendants violated his due process rights by: (1) not informing him of the specific documents he should have provided LSLBC to avoid allegedly violating Rule 129(A), (2) suspending his license prior to a hearing, and (3) following LSLBC's procedure wherein LSLBC staff investigate, prosecute, and adjudicate violations by contract licensees. Upon review of relevant caselaw, the Court finds that defendants in similar circumstances were entitled to qualified immunity.

In *Cloister E., Inc. v. New York State Liquor Auth.*, 563 F. Supp. 3d 90, 97 (S.D.N.Y. 2021), a restaurant alleged that the New York State Liquor Authority violated its procedural due process rights when the Authority suspended its liquor license prior to providing a notice and hearing. The court determined that the officials were entitled to qualified immunity because they reasonably determined that an emergency circumstance existed which warranted the summary suspension of the liquor license. The United States Court of Appeals for the Fifth Circuit, too, has held that "postdeprivation procedures provided by the state can, in some instances, satisfy

the requirements of due process. For example, the necessity of quick action by the state in order to safeguard important governmental or public interests can justify prehearing deprivations."[7] *Delahoussaye v. Seale*, 788 F.2d 1091, 1095 (5th Cir. 1986). In this case, the LSLBC determined that Plaintiff did not follow state contracting laws, and "public health, safety, or welfare imperatively require[d] emergency action" in the form of temporarily barring it from engaging in construction activities.

Furthermore, in *Zar v. S. Dakota Bd. of Examiners of Psychologists*, 976 F.2d 459, 465 (8th Cir. 1992), the United States Court of Appeals for the Eighth Circuit held that a state professional licensing board and its employee were entitled to qualified immunity when they revoked the plaintiff's professional license, even though the defendants failed to follow state administrative law prior to the revocation, because an adequate post-deprivation remedy existed. The Eighth Circuit relied on *Davis v. Scherer*, 468 U.S. 183 (1984), wherein the United States Supreme Court held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision." *Davis*, 468 U.S. at 194. Here, Defendants purportedly did not follow state administrative law by failing to include "[a] short and plain statement of the matters asserted" in the "Notice of Violation and Hearing" sent to Plaintiff. However, the hearing that LSBLC scheduled just three weeks after the temporary suspension provided Plaintiff with an opportunity to discuss his alleged Rule 129(A) violation with the board and potentially overturn the suspension, constituting an

[7] This Court has already determined that "the state has a strong interest in the regulation of licensed contractors within its borders." (Doc. 42 at 10).

adequate remedy to the suspension.

In *Fetty v. The Louisiana State Board of Private Security Examiners, et al.*, the Court held that board members were entitled to qualified immunity on a motion to dismiss. *Fetty*, 611 F. Supp. 3d 230, 246 (M.D. La. 2020). The plaintiff alleged that notice provided to it, revoking its professional license prior to a hearing, was constitutionally deficient. The notice informed the plaintiff of the investigation, the charges filed against it, and the opportunity for hearing. *Id.* The Court determined that the defendants were entitled to qualified immunity. Here, too, the Plaintiff was also notified of the investigation, the charges filed against it (potential violation of Rule 129(A)), and the date of the hearing.

Similarly, in *North Atlantic Security Company v. Blanche*, the plaintiff alleged that the employee of a state licensing board violated its due process rights when it temporarily revoked its private security operating license prior to an administrative hearing and in a manner violative of state administrative law. *N. Atl. Sec. Co.*, No. CV 19-379-EWD, 2022 WL 4593083, at *8 (M.D. La. Sept. 29, 2022). The Court found that the defendant was entitled to qualified immunity, also reasoning that while state law generally required the board to provide the security company a pre-revocation hearing, state law expressly provided an exception when the licensee was "found carrying an unauthorized weapon while performing the duties of a security officer."

Here, while Louisiana state law generally requires LSLBC to provide pre-suspension hearings, it also authorized the board to suspend the license prior to

a hearing in exigent circumstances (when "public health, safety, or welfare imperatively require[] emergency action"). In sum, caselaw instructs the Court that Plaintiff's Amended Complaint fails to assert that Defendants violated a clearly established due process right in the notice they issued or by determining that Plaintiff's alleged violation of Rule 129(A) constituted an emergency that justified temporarily suspending Plaintiff's licenses for a few weeks. Therefore, Defendants are entitled to the qualified immunity defense.

As to Plaintiff's third assertion that the Defendants could not investigate, prosecute, and adjudicate Plaintiff's alleged violations of Rule 129(A), it is axiomatic that members of administrative bodies, including state licensing boards, may constitutionally investigate, prosecute, and adjudicate violations of state law. Plaintiff's Amended Complaint cannot sufficiently plead that this structure of LSLBC, which is similar to the structure of local, state, and federal administrative boards across the nation, is violative of a clearly established constitutional right.[8]

[8] Plaintiff also alleges that "[a]t all times material and relevant hereto, defendants Jeff Landry, Brad Hassert, Lee Mallett and Elliot J. Temple instructed, authorized and conspired with the remaining defendants." However, the applicable pleading standards require something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555.

Accordingly, Defendants are entitled to qualified immunity as to the due process claims against them.[9]

### C. Leave To Amend.

Although leave to amend should be freely given, the Court need not grant leave to amend if an amendment would be futile. *Matter of: Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 236 (5th Cir. 2020) ("[W]here amendment would be futile, the court need not grant the plaintiff leave to amend.").

Here, the law is clear that Defendants are entitled to qualified immunity. No amendment would change this reality, and thus, an amendment would be futile. Accordingly, the Court denies Plaintiff's request to amend its Amended Complaint with respect to its due process claims. Accordingly, Plaintiff's due process claims are **DISMISSED WITH PREJUDICE**.

[9] As noted, Louisiana's due process clause is indistinguishable from the federal due process clause. ("The] due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment." *Newell-Davis v. Phillips*, No. 22-30166, 2023 WL 1880000, at *6 (5th Cir. Feb. 10, 2023) (citing *Progressive Sec. Ins. Co. v. Foster*, 711 So.2d 675, 688 (La. 1998)). The Fifth Circuit has "recognized that federal qualified immunity principles may be applied to claims under the Louisiana constitution '[i]nasmuch as [they] parallel entirely the § 1983 allegations.'" *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005)). Because Plaintiff's "state constitutional claim parallels—and indeed, is indistinguishable from—[its] arguments under the Federal Constitution and § 1983[,]" "[t]he foregoing federal qualified immunity analysis is therefore applicable to [its] claim under the state constitution as well." *Id.*

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that **Defendants' Motion to Dismiss (Doc. 55)** is **GRANTED**.

Baton Rouge, Louisiana, this 30th day of September, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**